FILED
2022 Mar-23  AM 11:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

PHILLIP J. COMBS,                          )
                                           )
        Plaintiff,                         )
                                           )
vs.                                        )    Case No.  7:20-cv-00933-HNJ
                                           )
COMMISSIONER, SOCIAL                       )
SECURITY ADMINISTRATION,                   )
                                           )
        Defendant.                         )

## MEMORANDUM OPINION

Plaintiff Phillip J. Combs seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner") regarding his claim for a period of disability, disability insurance, and supplemental security income benefits. (Doc. 1). The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment. (Doc. 9).

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).  To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge ("ALJ"), works through a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at §§ 404.1520(c), 416.920(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00–114.02. *Id.* at §§ 404.1520(d), 416.920(d).  If a claimant's impairment meets the applicable criteria at this step, that claimant's impairment would

prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment. *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience." (citing 20 C.F.R. § 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997))).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work. 20 C.F.R. §§ 404.1512(b)(3), 416.912(b)(3), 404.1520(g), 416.920(g). If the claimant can

perform other work, the evaluator will not find the claimant disabled. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot perform other work, the evaluator will find the claimant disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (citations omitted). Nonetheless, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Combs, age 39 at the time of the ALJ hearing, protectively filed an application for a period of disability, disability insurance, and supplemental security income benefits on February 8, 2018, alleging disability beginning March 28, 2017. (Tr. 196–206). The Commissioner denied Combs's claims, and Combs timely filed a request for a hearing on July 12, 2018. (Tr. 130–39, 142–43). The ALJ held a hearing on August 20, 2019, (tr. 15), and issued an opinion on November 20, 2019, denying Combs's claims. (Tr. 12–26).

Applying the five-step sequential process, the ALJ found at step one that Combs did not engage in substantial gainful activity after March 28, 2017, his alleged onset date. (Tr. 17). At step two, the ALJ found Combs exhibited the severe impairments of morbid obesity, lumbar degenerative disc disease, diabetes mellitus, depressive disorder, and anxiety disorder. (Tr. 17–18). At step three, the ALJ found that Combs's impairments did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18–20).

Next, the ALJ found that Combs exhibited the RFC

to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he has the following non-exertional limitations that reduce his capacity to perform the full range of sedentary exertion work: He can frequently climb ramps and stairs; can never climb ladders, ropes, or scaffolds; and can occasionally stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to extreme temperatures and any exposure to hazards. He can understand, remember, and carry out simple instructions, but not detailed ones and can maintain attention for two-hour periods. He would need a well-spaced work environment and should avoid excessive workloads, quick decision-

5

making, rapid changes, and multiple demands. He can tolerate occasional interaction with the public, co-workers, and supervisors.

(Tr. 20).

At step four, the ALJ determined Combs could not perform his past relevant work as a forklift operator and truck driver. (Tr. 24). However, at step five, the ALJ determined Combs could perform a significant number of other jobs in the national economy considering his age, education, work experience, and RFC. (Tr. 25–26). Accordingly, the ALJ determined that Combs has not suffered a disability, as defined by the Social Security Act, since March 28, 2017. (Tr. 26).

Combs timely requested review of the ALJ's decision. (Tr. 193–95). On June 9, 2020, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Tr. 1–3). On July 2, 2020, Combs filed his complaint with the court seeking review of the ALJ's decision. (Doc. 1).

## ANALYSIS

Combs contends the ALJ improperly discredited his subjective complaints of back pain and failed to properly evaluate his obesity when formulating his RFC. Contrary to Combs's contention, the court finds substantial evidence demonstrates the ALJ properly applied the pain standard and evaluated his obesity.[2]

---

[2] Based upon Combs's arguments, the court only assesses the evidence pertaining to Combs's back pain and obesity.

I.    **Substantial Evidence Supports the ALJ's Pain Analysis**

A three-part "pain standard" applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. [*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam)]. The pain standard requires evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged pain arising from the condition or a showing that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Id.*

*Porto v. Acting Comm'r of Soc. Sec. Admin.*, 851 F. App'x 142, 148 (11th Cir. 2021) (per curiam).  A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citations omitted).

Social Security Ruling ("SSR") 16-3p, effective March 28, 2016, and republished October 25, 2017, eliminates the use of the term "credibility" as it relates to assessing the claimant's complaints of pain and clarifies that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file."  SSR 16-3p, 2017 WL 5180304, *7 (Oct. 25, 2017).  An ALJ rendering findings regarding a claimant's subjective symptoms may consider a variety of factors, including: the claimant's daily activities; symptom location, duration, frequency, and intensity; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; and other factors concerning functional limitations and restrictions due to symptoms.  *See* 20 C.F.R. §§

404.1529(c)(3), (4), 416.929(c)(3), (4).

SSR 16-3p further explains that the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *9; *see also Wilson*, 284 F.3d at 1225 (If an ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so.").

Combs testified to standing at 6'2" tall and weighing 428 pounds. (Tr. 35). He normally weighs 305 to 310 pounds but has not weighed such since December 2013 when he stopped working. (*Id.*). In 2001, Combs "was pulled off [the] back of a box truck by a crate" and injured his lower back. (Tr. 37, 41). The pain in his back has progressively worsened since the incident. (Tr. 43–44). Combs averred that his pain reaches a ten out of ten, two to three times a week. (Tr. 44). On average, he rated his pain a seven but stated it never goes lower. (*Id.*). He also suffers numbness and sciatica in his legs. (Tr. 41–42). Combs experiences sharp shooting pains from his back to about three inches above his ankles. (Tr. 42, 47). Combs takes prescription pain medication, which he testified provides no relief. (Tr. 44–45). He also takes over-the-counter pain medication as well. (Tr. 45–46). Still, he explained, the mixture of medications does not alleviate his back pain below a seven. (Tr. 46). Combs does not maintain health insurance and cannot obtain prescribed narcotics, surgery, or other treatment. (Tr. 45, 47).

After five to seven minutes of sitting, Combs's back "starts hurting really bad." (Tr. 42).  He experiences back tightness and feels the bones in his back grinding.  (*Id.*). Combs also has issues with standing for more than five to ten minutes.  (*Id.*).  As a result, he constantly switches between standing and sitting.  (*Id.*).  His back pain limits his ability to walk longer than five minutes.  (Tr. 42–43).  Furthermore, Combs cannot lift more than two pounds without experiencing numbness in his legs.  (Tr. 43).  At night, he obtains "maybe three-and-a-half hours" of uninterrupted sleep.  (Tr. 46).  As a result, he sleeps for approximately two hours during the day, every day.  (Tr. 46–47).

Combs lives with his parents and cannot help with any chores around the house. (Tr. 54).  He makes his bed and launders his clothes with assistance.  (*Id.*).  Combs usually sits down while making his bed and needs help "putting the sheets . . . and comforter on."  (Tr. 56).  He also needs help with carrying his clothes to the laundry room and transferring them from the washing machine to the dryer.  (*Id.*).  Combs explained he cooks while sitting.  (Tr. 54).  During an average day, Combs sits and watches television with his father, and at some point, he will lie down in his room and watch television for the rest of the day.  (Tr. 54–55).

In his Function Report, Combs specified his "activities are far and few" between due to his limited abilities.  (Tr. 248).  Combs explained he cannot lie on his back, and otherwise, he cannot move.  (Tr. 249).  Combs mentioned that he cooks for "maybe 30 minutes" or "however long it takes" while sitting.  (Tr. 250).  Combs does his own laundry but requires assistance with transporting it to the laundry room.  (*Id.*).

Otherwise, he cannot complete "any real chores," such as house or yard work. (Tr. 250–51). Combs can drive; however, he cannot shop at stores because his "back gives out." (Tr. 251). Because he cannot sit for longs periods of time, Combs no longer goes fishing and watches television and plays video games if he lies down. (Tr. 252). Combs's back pain limits his lifting, squatting, bending, standing, reaching, walking, kneeling, and stair climbing abilities. (Tr. 253). Combs can walk around 75 feet before needing rest. (Id.). He then needs about 15 minutes of rest before he can resume walking. (Id.).

In a Third Party Function Report, Combs's father, Blair, stated Combs's activities "are severely hampered" and limited. (Tr. 240). Blair averred that Combs rarely sleeps through the night, in part, because of his back pain. (Tr. 241). He also explained that Combs sit downs in a chair when cooking on a stove. (Tr. 242). He further reported that Combs does his own laundry but needs help transporting it to the laundry room. (Tr. 242). Blair asserted that Combs has limitations on the type of chores he can perform such as pushing a lawnmower. (Tr. 242–43). He noted Combs could drive but could not shop in stores because "[h]is back gives out quickly." (Tr. 243). Blair proclaimed that Combs's back pain has limited his fishing activity and affects Comb's ability to lift, squat, bend, stand, kneel, and climb stairs. (Tr. 244–45). Blair then discussed that Combs has severe limits as to lifting and carrying objects. (Tr. 245). In addition, he declared Combs can only stand and walk for short periods of time. (Id.). Blair claimed Combs could walk 75 to 100 feet before needing to stop and rest. (Id.).

Combs then needs to rest for 10 to 15 minutes before walking again.  (*Id.*).

The ALJ found that Combs's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but concluded that Combs's "statements concerning the intensity, persistence, and limiting effects" of his impairments were not consistent with the objective medical evidence.  (Tr. 21).  The court finds that the ALJ adequately articulated the reasons for her findings.

The ALJ noted an orthopedist in September 2016 opined that Combs likely suffered mechanical low back pain.  (Tr. 22).  The orthopedist placed an order for an x-ray exam and referred Combs to physical therapy.  (*Id.*).  According to the physical therapist, the x-ray exhibited Combs had "anterior wedging at the thoracolumbar junction, degenerative changes in the lower lumbar spine, and lumbarization of S1." (*Id.*).  The ALJ explained Combs returned to the orthopedist in October 2016 and "reported no improvement in his pain with medication and one physical therapy session."  (*Id.*).  The orthopedist's diagnosis stated Combs suffered lumbago and "noted that treatment and imaging options were limited due to [Combs]'s weight and poor glucose control."  (*Id.*).

The ALJ then referenced a January 2017 MRI revealing Combs exhibited a "broad-based disc protrusion at L5-S1" and "mild neural foraminal narrowing to the left at L4-L5 and to the right at L5-S1."  (*Id.*).  She opined that the records provided by Combs's primary health care provider "included limited objective evidence," and she pointed to a January 2018 report portraying Combs with mild tenderness at "L5" and a

fair range of motion.  (*Id.*).  Subsequently, in March 2018, the provider noted Combs

suffered mild lumbar spine tenderness and exhibited a decreased range of motion.  (*Id.*).

The ALJ also found that Combs received conservative treatment for his back pain.  (*Id.*).

Furthermore, the ALJ discussed the findings of Alexandre Todorov, M.D., who

completed a consultative medical examination of Combs in May 2018.  (*Id.*).  Dr.

Todorov's report stated Combs's lumbar spine portrayed a decreased range of motion

due to his extreme obesity and low back pain.  (*Id.*).  Dr. Todorov also found Combs

could not squat and had a limited ability to sit, stand, and walk due to his extreme

obesity.  (*Id.*).  The ALJ pointed out Combs's "[s]ensation was intact," "reflexes were

normal," "muscle tone and strength were normal," "gait was normal," and "he could

heel/toe walk."  (*Id.*).

The ALJ then considered the opinion of the State agency Medical Consultant

Gloria L. Sellman, M.D.  (*Id.*).  Dr. Sellman expressed Combs "could perform a range

of activities consistent with light exertion work."  (*Id.*).  The ALJ found Dr. Sellman's

opinion only partially persuasive because she believed it did not correspond with the

evidence in the record nor adequately consider Combs's pain in determining his

functional abilities.  (Tr. 22–23).[3]

---

[3] The ALJ did not explicitly reference Combs's Function Report in her opinion.  Nonetheless, the
ALJ's opinion states she "considered all [of Combs's] symptoms" based upon 20 C.F.R. 404.1529, 20
C.F.R. 416.929, and SSR 16-3p.  (Tr. 20).  In addition, "'there is no rigid requirement that the ALJ
specifically refer to every piece of evidence in h[er] decision, so long as the ALJ's decision is not a
broad rejection which is not enough to enable a reviewing court to conclude the ALJ considered the
claimant's medical condition as a whole." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th
Cir. 2014) (internal alterations adopted) (citation omitted).  For the reasons discussed herein, the ALJ's

Substantial evidence in the record supports the ALJ's findings.  On January 14, 2015, Combs presented at Northport Medical Center complaining about low back pain. (Tr. 322).  Combs remarked that he did not have radiating pain in his legs.  (*Id.*).  During a physical examination, Combs exhibited "L-spine vertebral tenderness."  (Tr. 325). The Northport record reported that the sensation and strength in Combs's extremities remained intact.  (*Id.*).  Combs underwent an x-ray exam which displayed "[m]oderately advanced discogenic degenerative change at L5-S1 with mild discogenic degenerative change in the remainder [of] the lumbar spine" and "moderate degenerative change in the lower thoracic spine."  (Tr. 326).  In addition, Combs exhibited a "partially lumbarized S1."  (*Id.*).  The x-ray also showed "[n]o fracture or malalignment . . . in the lumbar spine."  (*Id.*).  Combs received a prescription for Cyclobenzaprine, Hydrocodone, and Ibuprofen.  (Tr. 328).  Furthermore, Combs received clearance to return to work by January 16, 2015.  (Tr. 327).

On January 26, 2015, Combs presented back at Northport with the same complaint.  (Tr. 317).  Combs exhibited a decreased range of motion in has back and had tenderness in his lumbar.  (Tr. 319).  Medical personnel instructed him to secure bed rest and prescribed him Percocet and Medrol.  (Tr. 320).

---

opinion reasonably portrays she considered Combs's condition as a whole.  Accordingly, any error arising from the ALJ's failure to summarize Combs's Function Report manifests harmlessly, particularly as Combs does not raise any issue regarding the omission.  *See Nance-Goble v. Saul*, No. 4:20-cv-00369-CLM, 2021 WL 2401178, at *3–5 (N.D. Ala. June 11, 2021) (finding the ALJ did not specifically mention the claimant's relevant hearing testimony but stated he considered "all [her] symptoms" based upon § 404.1529, and thus, did not improperly omit reference to the claimant's testimony).

In September 2015, medical records from Cahaba Medical Care Foundation portray Combs complaining of low back pain but lodging no complaints of muscle weakness or joint pain.  (Tr. 387, 390).  Combs had a normal gait, normal ambulation, and his sensation remained grossly intact.  (Tr. 390).  He did, however, exhibit "tenderness . . . [in his] lower back from L4-S1" and "bilateral tenderness . . . [in his] paravertebral muscles."  (Tr. 390).  Combs requested narcotics.  (Tr. 391).  The physician recommended "supportive therapy" which included muscle relaxants and nonsteroidal anti-inflammatory drugs ("NSAID"), but Combs refused such treatment.  (*Id.*).  The doctor "impressed upon [Combs] that narcotics are not indicated in the setting of chronic back pain, especially without imaging confirming diagnosis."  (*Id.*).  The doctor also counseled Combs on the importance of weight loss and its affect on improving back pain.  (*Id.*).  Combs returned to Cahaba in October 2015, and received prescriptions for Mobic, Tylenol, Robaxin, Cymbalta, and Cyclobenzaprine.  (Tr. 383, 387).

In September 2016, the Kirklin Clinic at UAB documented Combs complaining of low back pain.  (Tr. 296).  Combs described a "pounding/stabbing" pain with rare radiation to both legs.  (*Id.*).  At that time, Combs explained the fetal position provided him some relief and stated he experienced no numbness, tingling, or loss of coordination.  (Tr. 296–97).  During a physical examination of Combs's lumbar spine, pelvis, and hip, Combs displayed tenderness, taut bands, and a severely restricted range of motion.  (Tr. 298).  He scored a five out of five during his manual muscle test, his

senses remained intact, and he maintained normal coordination. (*Id.*). Combs's blood pressure read 146/72. (*Id.*). The orthopedist believed Combs suffered mechanical back pain. (Tr. 299). He ordered Combs an x-ray exam, referred him to physical therapy for acute low back pain, and prescribed him Meloxicam, Zanaflex, and a NSAID. (*Id.*).

Based on the orthopedist's referral, Combs underwent a physical therapy evaluation at Kirklin for lower back pain, gait difficulty, and muscle weakness. (Tr. 293). Combs explained he still did physical therapy exercises from other therapy sessions in the past and that "they helped somewhat." (Tr. 294). He further reported the best pain control resulted from smoking marijuana and stretching. (*Id.*). The physical therapist noted that the x-ray ordered by the orthopedist revealed Combs exhibited anterior wedging at the thoracolumbar junction, degenerative changes in the lower lumbar spine, and lumbarization of S1. (*Id.*). The therapist's initial assessment stated Combs displayed low back pain, muscle weakness in his core and hips, decreased flexibility in his hip flexors, difficulty walking, decreased range of motion in his lumbar spine and left hip, posture abnormality when walking, and decreased function with prolonged walking and driving long distances. (Tr. 295). The therapist opined that Combs experienced symptoms consistent with facet arthropathy. (Tr. 295). He commented that the "[m]echanism of [Combs's] injury involves [a] fall years ago and musculoskeletal imbalance overtime." (*Id.*). The therapist believed Combs had fair to good rehabilitation potential and could achieve his long-term goal of walking longer than 30 minutes within two to four therapy visits. (*Id.*).

Combs returned to Kirklin in October 2016 complaining of low back pain again. (Tr. 288).  Combs denied any pain medication or positional relief.  (*Id.*).  During a physical examination of Combs's lumbar spine, pelvis, and hip, Combs exhibited tenderness, taut bands, and a severely restricted range of motion.  (Tr. 290–91).  In addition, Combs's manual muscles tested five out of five, his senses remained intact, and he maintained normal coordination.  (Tr. 291).  Combs's blood pressure read 162/116.  (*Id.*).  The orthopedist from Combs's prior visit at Kirklin gained the impression that Combs suffered lumbago and prescribed him Tramadol and Gabapentin.  (*Id.*).  The orthopedist also discontinued Combs's Mobic prescription and continued him with nightly doses of Zanaflex.  (*Id.*).  The orthopedist remarked again that Combs's "back pain is likely mechanical in nature and alarming symptoms remain[ed] present."  (*Id.*).  He referred Combs to Equal Access Birmingham "not only for physical therapy, but a primary care physician as well."  (*Id.*).  The orthopedist stated Kirklin remained limited in treatment and imaging options due to Combs's weight and glucose control.  (*Id.*).

In November 2016, Combs underwent his second physical therapy session.  (Tr. 286).  Combs noted he was waiting for approval from a doctor to receive "injections." (*Id.*).  He also explained that the home exercise program and online exercises that the physical therapist implemented improved his walking.  (*Id.*).  The physical therapist reported Combs's lower back portrayed a reduced range of motion.  (Tr. 287).  In addition, the physical therapist could not test Combs's hip flexor due to Combs's pain

with the positioning. (*Id.*). At the conclusion of the session, the therapist commented Combs "definitely require[d] increased flexibility of [his] hip flexors" and "significant gluteal strength." (*Id.*). He also noticed no significant change in Combs's range of movement. (*Id.*).

On December 26, 2016, Combs checked into Northport after being in a motor vehicle accident. (Tr. 305). Combs stated he had back pain and rated its severity a five, but he left before seeing a physician or nurse. (Tr. 305, 309).

On December 27, 2016, Combs returned to Northport for "moderate" low back pain. (Tr. 336). Combs experienced tenderness in his lumbar spine and pain when demonstrating his range of motion. (Tr. 338). Combs underwent an x-ray exam which came back "negative." (Tr. 338, 344). Combs received a prescription for Flexeril, Naprosyn, and a Norco. (Tr. 339). In January 2017, Combs returned to Northport due to pain in his lower back and legs. (Tr. 340). Combs underwent an MRI which portrayed "[m]ild neural foraminal narrowing to the left at L4-L5 and to the right at L5-S1." (Tr. 343, 345). He received a prescription for Naprosyn, Flexeril, Medrol, and a Norco. (Tr. 343).

The record then portrays Combs presented at Whatley Health Services, Inc., in May 2017 for an office visit. (Tr. 348). Combs received a prescription for Baclofen and an NSAID to treat his back pain. (Tr. 352). Combs also received encouragement to lose weight, and instruction to rest and apply ice and heat to his back for comfort measures. (*Id.*). Between June and October 2017, Combs received multiple

prescriptions for Tramadol and a prescription for Naproxen to combat his pain.  (Tr. 354–56).  In January 2018, Whatley personnel reported Combs suffered mild lower spine tenderness and exhibited a fair range of motion.  (Tr. 357).  The record also noted Combs suffered sciatica in his lower left extremity.  (*Id.*).  In February 2018, Combs received a prescription for Gabapentin.  (Tr. 363).  In March 2018, Combs again displayed mild lower spine tenderness and a decreased range of motion.  (Tr. 364). Whatley personnel increased Combs Gabapentin dosage to control his back pain.  (*Id.*).

In May 2018, Dr. Todorov performed a consultative exam on Combs.  (Tr. 371). Combs explained that he suffers severe, intense pain "in[] the lower L5-S1 area" of his back.  (*Id.*).  Combs expressed he sometimes experiences numbness that radiates from his back to his legs.  (*Id.*).  Combs also stated he can sit for "45 minutes without shifting" and for a total of two hours at a time.  (Tr. 372).  He discussed needing to lie down with a pillow under his chest for "10-15 minutes" before he can sit for the rest of the day. (*Id.*).  In addition, Combs averred "[h]e can stand for 20 minutes before he must lean against something."  (*Id.*).

Dr. Todorov reported Combs exhibited no sensory deficit, motor difficulties, joint deformities, or assistive devices.  (Tr. 372–73).  He also conveyed Combs did not suffer any sensory or reflex abnormalities.  (Tr. 373).  In addition, Dr. Todorov found no signs of muscle deficit hindering Combs's ability to lift and carry.  (*Id.*).  During the exam, Combs appeared to have fair strength in all four of his extremities and "[g]ood coordination of the movements."  (Tr. 372).  Combs also exhibited maximum grip

strength, good dexterity, and could pick up small objects.  (Tr. 373).  Dr. Todorov explained that "[h]andling . . . objects is not an issue."  (*Id.*).  Furthermore, Combs portrayed the ability to heel and toe walk.  (*Id.*).  However, Combs exhibited "extreme limitations to the movements of the lower back because of [his] extreme obesity and . . . pain."  (*Id.*).  In addition, Combs could not squat and displayed limitations in his ability to sit, stand, and walk.  (*Id.*).  Dr. Todorov opined that Combs could "do work related activities."  (*Id.*).

In June 2018, Dr. Sellman reviewed Combs's medical records and concluded he portrayed a history of degenerative disc disease "that is not significant on imaging in 2016, but appears to be exacerbated by pain caused by his morbid obesity."  (Tr. 100–01).  She further explained that Combs's "limitations with [his range of movement] is due to his morbid obesity rather than a joint or muscle impairment."  (Tr. 101).  "Regardless, [Combs] would be expected to have some limitations resulting from [his] body habitus."  (*Id.*).  Dr. Sellman ultimately concluded Combs could perform light exertion work rather than just sedimentary work.  (Tr. 98–101, 104).

The record portrays medical personnel repeatedly treated Combs's low back pain with either pain medications, NSAIDs, or muscle relaxants.  In addition to medication, health care providers have only referred Combs to physical therapy.  The objective evidence does not reflect a recommendation for "more or different treatments." *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 864 (11th Cir. 2017) (per curiam); *see also Douglas v. Comm'r, Soc. Sec. Admin.*, 832 F. App'x 650, 658 (11th Cir. 2020) ("[Plaintiff]

did not require an assistive device to walk . . . [and] course of treatment did not include surgery."). The conservative treatment of Combs's back pain weighs against his subjective complaints. *Horowitz*, 688 F. App'x at 863 ("The ALJ's . . . determination is supported by substantial evidence for a second reason as well: [Plaintiff] received conservative treatment for her impairments."); *Sheldon v. Astrue*, 268 F. App'x. 871, 872 (11th Cir. 2008) ("A doctor's conservative medical treatment for a particular condition tends to negate a claim of disability." (citation omitted)).

An orthopedist also opined Combs likely suffers mechanical low back pain, and a physical therapist believed Combs stood a fair to good chance to improve his condition. *Douglas*, 832 F. App'x at 657–58 (finding physical therapists' beliefs that plaintiff manifested a favorable prognosis for improved function supported the ALJ's decision to deny benefits). Furthermore, multiple MRIs exhibited Combs only suffered mild or moderate degenerative changes to his lumbar. *Herron v. Soc. Sec. Admin., Com'r*, 649 F. App'x 781, 784–86 (11th Cir. 2016) (holding substantial evidence supported an ALJ's denial of benefits despite the plaintiff's mild degenerative disc disease).

Moreover, one medical record stated Combs could return to work, and Dr. Todorov opined Combs portrayed the ability to perform "work related activities." *See Davis v. Barnhart*, 153 F. App'x 569, 571 (11th Cir. 2005) ("The ALJ's [adverse] decision was supported by substantial evidence. The ALJ discussed the physicians' diagnoses and treatment plans, [plaintiff's] numerous test results, and [plaintiff's] testimony. The evidence showed [plaintiff] was diagnosed with degenerative disc disease and prescribed

pain medication and physical therapy. Several of the physicians specifically indicated [plaintiff] would be able to return to work.").

The foregoing review portrays substantial evidence supports the ALJ's assessment of Combs's subjective complaints of pain.

## II.    The ALJ Properly Assessed Combs's Obesity

The court also finds the ALJ properly evaluated Combs's obesity when formulating his RFC. SSR 19-2p, effective May 20, 2019,[4] provides the ALJ must consider "the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment." SSR 19-2p, 2019 WL, at *4. First, the ALJ stated Combs suffered the severe impairment of morbid obesity. (Tr. 17). Next, the ALJ quoted SSR 19-2p in explaining how to diagnose obesity. (Tr. 21). She properly stated that SSR 19-2p defines obesity as a body mass index ("BMI") of 30.0 or higher. 2019 WL, at *4. The ALJ then explained Combs had a BMI of 54.7 kg/m$^2$. (*Id.*). She then "considered all of [Combs]'s functional limitations related to the ability to do basic work activities resulting from his obesity, alone and in combination with his other impairments, with the finding that he can perform a reduced range of sedentary exertion work." (*Id.*).

---

[4] SSR 19-2p applies to "applications filed on or after [May 20, 2019,] and to claims that are pending on and after [May 20, 2019.]" SSR 19-2p, 2019 WL 2374244, at *5 n.14 (May 20, 2019). Combs's claim remained pending on May 20, 2019, as the ALJ did not issue her decision until November 20, 2019. Thus, the ALJ properly invoked SSR 19-2p in the review of Combs's claim. *See Michael O. v. Comm'r of Soc. Sec.*, No. C20-6161 RSM, 2021 WL 2805337, at *3 (W.D. Wash. July 6, 2021) (finding SSR 19-2p applied to the plaintiff's claim, filed in April 2018, because the ALJ did not issue a decision until January 2020).

Substantial evidence supports the ALJ's application of SSR 19-2p.  The ALJ recognized that Combs exhibits limitations due to his obesity in combination with his other impairments, and thus, she precluded him from climbing ladders, ropes, or scaffolds, and limited him to only occasional stooping, kneeling, crouching, and crawling.  The medical records portrays no motor difficulties, no sensory or reflex abnormalities, and no joint deformities.  Combs also could heel and toe walk, and he exhibits maximum grip strength, normal to good coordination, good dexterity, and no difficulties handling objects.  Thus, the ALJ's assessment of Combs's obesity does not manifest as improper, and substantial evidence buttresses the ALJ's RFC determination. *See Anderson v. Kijakazi*, No. 8:20-CV-947-AEP, 2021 WL 4146300, at *7 (M.D. Fla. Sept. 13, 2021) ("A review of the record establishes that the ALJ properly considered Plaintiff's obesity . . . [in holding] that Plaintiff could never climb ramps, stairs, ladders, ropes, or scaffolds and could only occasionally balance, stoop, kneel, crouch, and crawl.").

Combs argues "the ALJ should not have . . . considered the statements that he should lose weight" in rendering her decision.  (Doc. 16 at 11).  Combs cites to SSR 00-3p for this contention, which states benefits will rarely be denied due to "'failure to follow prescribed treatment' for obesity."  2000 WL 33952015, at *9 (May 15, 2000). Concomitantly, he also quotes SSR 02-1p, stating "[a] treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise is not a prescribed treatment."  2002 WL 34686281, at *9 (Sept. 12, 2002).  First, SSR 02-1p

superseded SSR 00-3p.  SSR 02-1p, 2002 WL, at *1.  SR 19-2p then "rescind[ed] and replace[d] SSR 02-1p," which the court finds the ALJ properly applied.  SSR 19-2p, 2019 WL, at *1.  The language Combs quotes from SSR 00-3p and SSR 02-1p does not exist in SSR 19-2p.

Second, even if the prior guidance were applicable, they provided that "[b]efore failure to follow prescribed treatment for obesity can become an issue in a case," there first must be a finding that an "individual is disabled because of obesity or a combination of obesity and another impairment(s)."  SSR 00-3p, 2000 WL, at *9; SSR 02-1p, 2002 WL, at *9.  As previously discussed, substantial evidence supports the ALJ's finding that Combs does not suffer a disability due to his obesity or in combination with his other impairments.

In sum, the ALJ offered adequate explanations for discounting Combs's testimony as to his pain.  Further, the ALJ properly cited objective medical evidence refuting the severity of Combs's alleged symptoms, and Combs has not offered any argument or pointed to any facts undermining the substantial evidence supporting the ALJ's residual functional capacity assessment.  Although Combs maintains his pain and obesity limits him to a greater degree than the ALJ assessed, the court cannot reweigh the evidence or second-guess the ALJ's conclusions.  *See Winschel*, 631 F.3d at 1178 (citations omitted).  Thus, the ALJ did not err in assessing Combs's pain allegations or RFC.

**CONCLUSION**

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision.

**DONE** and **ORDERED** this 23rd day of March, 2022.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE